Gager and others vs. Paul.

GAGER and others, Respondents, vs. PAUL, Administrator, imp., Appellant.

*October 16 — November 5, 1901.*

*Banks and banking: Insolvency: Stockholders' liability: Estates of decedents: Transfers: Limitation of actions: Capital stock not fully paid: Fraud: Creditors' action: Unlawful dividends: Liability of residuary legatee: Trial: Discretion: Rebutting presumption of payment: Appeal: Parties.*

1. The statutory liability of stockholders in a bank under sec. 47 of the banking act may be enforced against the estate of a deceased stockholder in an action by creditors to wind up the affairs of the bank, and need not be presented as a claim in the settlement of

Gager and others vs. Paul.

the estate in the county court; and if the estate has been distributed the residuary legatee will be liable, and in case of his death his personal representative.

2. Under sec. 16 of the banking act (providing that a person holding stock in any bank who shall sell or transfer the same "shall be held and remain for the term of six months from and after such sale . . . personally liable to the amount of the stock so as aforesaid sold . . . for the payment of all debts and liabilities of such bank" existing at the time of such sale), the transferrer's liability is limited to those who were creditors at the time of the transfer, and the action to enforce such liability must be commenced against him within the six months so limited. The commencement of an action to wind up the affairs of the bank within such six months, to which however the person so liable was not made a party within the required time, is insufficient to prevent the running of the statute.

3. A stockholder in a banking corporation received certificates of stock purporting to be full-paid, for which he actually paid but a fraction of the par value. Subsequently his liability for the balance was in form discharged by the application to its payment of an entirely fictitious accumulation of profits, and an increase in the capital stock was paid for in the same manner. Held, that as between the stockholder and the bank, the latter could not recover the unpaid portion of the capital stock, but that the transaction constituted a fraud upon the creditors of the bank and gave rise to a right of action in their favor, enforceable only in an equitable action to which the bank is a party.

4. The cause of action in favor of the creditors of the bank in such a case being of such a nature that it could not be adjudicated in the county court in probate proceedings, their rights against a deceased stockholder are not foreclosed by failure to present their claim in that court, but after the settlement of his estate they may enforce them against his residuary legatee.

5. The liability of a stockholder in an insolvent bank to refund dividends paid him in violation of sec. 40 of the banking act is to the corporation and enforceable by it; but a stockholder or creditor may invoke the aid of a court of equity to compel restitution, when the corporation will not act.

6. One who seeks, under sec. 3845, Stats. 1898, to recover from a legatee or next of kin a claim that might have been proved in county court must allege and prove that no time had been fixed in which creditors might present their claims against the deceased for allowance, or that no notice of such limitation had been ordered or given.

Gager and others vs. Paul.

7. The right of an insolvent bank, whose affairs are being wound up at the suit of creditors, to recover dividends paid a deceased stockholder in violation of sec. 40 of the banking act, is one provable in county court, and cannot be enforced against next of kin or legatees if opportunity to prove it against the estate was duly given.

8. After disposing of a motion in a cause which is upon the calendar under due notice of trial, it is within the discretion of the court to proceed with the trial of the remaining issues, notwithstanding the prohibition against taking oral evidence on a motion.

9. In proceedings to recover from the residuary legatee of a deceased stockholder in an insolvent bank a balance due on shares of stock derived from her testator, there was evidence that the testator gave a stock note for the shares but no evidence as to what became of it. There was evidence, however, that he never paid more than sixty per cent. on his shares, and that some years later a resolution was passed attempting to pay the remaining forty per cent. out of a fictitious accumulation of profits. *Held,* sufficient to rebut the presumption that the whole of the stock note had been paid.

10. Where judgment was entered against two defendants and one only appealed, the other cannot on such appeal be heard to attack the judgment as against him.

APPEAL from a judgment of the circuit court for Rock county: R. G. SIEBECKER, Judge. *Modified and affirmed.*

This action was originally commenced October 19, 1897, by one Marsden, simply as a stockholder of the Bank of Edgerton, a banking corporation, alleging insolvency and praying the appointment of a receiver. On the 8th of November following the complaint was amended by alleging that Marsden was a creditor to a small amount, so as to pray that the creditors be required to present their claims and become parties to the action Thereafter the present plaintiffs, *Gager* and about twenty others, claiming to be creditors, prayed to be substituted as plaintiffs, and that all directors and stockholders be made defendants, and that the complaint be amended so as to charge all the various liabilities to directors and stockholders, and that the creditors be allowed to recover against them. On March 11,

1898, this petition was granted by order, and the complaint amended accordingly, so as to allege against Rebecca Morgan that one I. P. Morgan owned two shares, of $500 each, of the stock of the bank; that he died on the 29th day of August, 1894, testate; that his will was duly probated October 2, 1894; that Rebecca Morgan had received some $6,000 as residuary legatee; and that his estate was finally settled June 1, 1897,— and claim recovery from Rebecca Morgan, as residuary legatee, of the statutory liability of the face of the stock ($1,000), also the unpaid consideration for the stock, and also for dividends paid to said Morgan and his estate illegally while the bank was insolvent. W. H. Morgan, a son of the deceased, was also made a defendant, upon the allegation, subsequently proved, that this stock had been transferred to him legally and effectively on the books of the company on May 6, 1897, claiming that he, as transferee of the stock, was also liable on all of the three grounds above mentioned. Rebecca Morgan died May 12, 1899, and action was revived against *John Paul* as her special administrator.

The administration of the affairs of the bank in the hands of the receiver having proceeded to the point that it was ascertained that all assets of the bank would be so inadequate to pay the creditors as to leave some $300,000 unsatisfied, and that the capital of the bank was only $50,000, the case was noticed for trial upon the court calendar of the May, 1900, term of the circuit court for Rock county, and at the same time an order to show cause was served, returnable on May 5th, one of the early days of the May term, for consideration of a proposed settlement with most of the larger stockholders and directors, whereby they offered to pay some $56,000 in satisfaction of all their liabilities. The judge of the Rock county circuit court, having been of counsel, requested the attendance of Judge SIEBECKER, of the Ninth circuit, and on April 23d entered a

Gager and others vs. Paul.

·court order that he be so called in on the 5th of May to
hear all motions and applications made in the above-entitled
action, and to make all orders or judgments necessary to bo
made in said action on said day and during the time he
shall so attend. On the 5th day of May all parties appeared,
and the plaintiffs proposed to go to trial on the remaining
issues in the case, with reference to the liability of the Mor-
gans and two or three other stockholders, which the de-
fendants resisted, mainly on the ground that the case was
not yet properly reached on the calendar under the special
rules of procedure in effect in the circuit court for Rock
county. Their objections were overruled, and the court
proceeded with the trial.

Upon the trial the facts above quoted from the complaint
were made to appear; also, that the corporation had been
insolvent for seventeen years prior to the commencement of
Marsden's suit, or since 1880; that I. P. Morgan was one of
the original subscribers for one share of stock, of $500, of the
original organization of $25,000 total capital, subject to a
right of increase to $100,000 by vote of the majority of the
shareholders; that an apparently full-paid certificate of stock
was issued to I. P. Morgan at the time of incorporation,
which he retained and which passed to his executors at tho
time of his death; that in April, 1885, by a proper vote, the
capital stock was increased to $50,000, and a certificate of
one share, of $500, of such increase, was delivered to and ac-
·cepted by said Morgan and remained his to his death, and
then passed to his executors; that at the time of the original
organization there was paid by Morgan, in common with
other stockholders, only sixty per cent.of the amount of the
respective shares of stock issued to them; that at the stock-
holders' meeting in 1885, at which the capital stock was in-
·creased to $50,000, it was voted to set off the sum of $15,000,
undivided profits, to be applied as a payment upon such in-
·creased stock, and on the following day it was voted to

apply $20,000 of so-called undivided profits to the payment
of the balance due upon the original stock and upon such
increased stock, and that said sums of $15,000 and $20,000,
respectively, of the moneys of said bank, were so used and
applied, and that in no other way, except only for said orig-
inal sixty per cent., had any part of the original capital stock
of said bank ever been paid for, or of said increased capital
stock.   It also appeared that from November 10, 1890, up-
to and including July 16, 1896, there were paid semi-annual
dividends of four per cent. each to I. P. Morgan and to his
executors, and that a dividend of three per cent. was paid
in May, 1897, to W. H. Morgan personally, as assignee of
said stock.

These facts being substantially found by the court, judg-
ment was entered against the appellant, administrator of
Rebecca Morgan's estate, for the $1,000 statutory liability;
for forty per cent. of the original first share of stock, $200;
and for the whole amount of the second share of stock, is-
sued upon alleged increase of capital, $500,— together with
interest on all of said sums from July 11, 1899, the date
when the amount of claims against the bank was ascertained,
and an interlocutory judgment entered declaring the lia-
bility of stockholders, and also that the appellant was liable
for all of the dividends above mentioned, excepting that of
May, 1897, paid to W. H. Morgan personally.   From this
judgment defendant *John Paul*, as administrator of Rebecca
Morgan's estate, brings this appeal.

*E. D. McGowan*, attorney, and *L. B. Caswell*, of counsel,
for the appellant, argued, among other things, that the ac-
tion as to Rebecca Morgan was not commenced until she
was impleaded.   Sec. 4239, Stats. 1898; *Levy v. Wilcox*, 96
Wis. 127; *Webster v. Pierce*, 108 Wis. 407, 418, 419; *Bell's
Appeal*, 115 Pa. St. 88; *Sands v. Burt's Ex'rs*, 1 Albany L.
J. 124; *Newman v. Marvin*, 12 Hun, 236; *Shaw v. Cock*, 78
N. Y. 194; *Campbell v. Bowne*, 5 Paige, 34; *Rucker v. Dailey*,

66 Tex. 284; *German F. Ins. Co. v. Bullene*, 51 Kan. 764; *Union Pacific R. Co. v. Wyler*, 158 U. S. 285; *Wilson's Adm'r v. Holt*, 91 Ala. 204. The estate of Rebecca Morgan was not liable for the unpaid capital on the shares held by I. P. Morgan. In the absence of an express statute the assignor of stock is released. *Bend v. Susquehanna B. & B. Co.* 6 Har. & J. 128; *Cleveland v. Burnham*, 55 Wis. 606; *Webster v. Upton*, 91 U. S. 70; *Nat. Bank v. Case*, 99 U. S. 631, 632; Thompson, Liability of Stockholders, §§ 90–102; *Bowden v. Johnson*, 107 U. S. 251; *Isham v. Buckingham*, 49 N. Y. 216; Taylor, Priv. Corp. §§ 718–720; Angell & A. Corp. § 534.

For the respondents there was a brief by *Sutherland & Nolan* and *Olin & Butler*, and oral argument by *Geo. G. Sutherland* and *H. L. Butler*.

*John Cunningham* and *C. E. Pierce*, for the defendant *W. H. Morgan*.

DODGE, J.    This appeal presents a few of the very numerous questions that are liable to arise for solution by the courts in working out the policy of the general closing-up action upon insolvency of corporations, especially of banking corporations whose stockholders are chargeable with the socalled additional statutory liability for the par value of their stock. The recoveries here sought are of three classes: (1) The statutory liability above mentioned; (2) the liability of a stockholder for the amount of his stock subscription where, by reason of contract with the corporation, it has not been paid for in full, either in money or its equivalent; and (3) the liability of a stockholder for dividends received by him practically out of the capital of the corporation,— that is, paid and received at a time when there were no earnings or profits out of which they could be paid. Some of these questions are further involved by the peculiar circumstance that the action is against a residuary legatee of a stockholder, brought after the completed settlement of his estate.

1. *Statutory Liability.* This rests upon two sections of
the banking act, now included as subdivisions under sec.
2024, Stats. 1898. These are subsecs. 47 and 16 [pp. 1537,
1539]. Subsec. 47 provides: "The stockholders in every
corporation or association organized under the provisions of
this act shall be individually responsible to the amount of
their respective share or shares of stock for all its indebted-
ness and liabilities of every kind." Subsec. 16 provides that
" each and every person owning or holding stock in any
bank or banking association who shall sell, transfer or as-
sign his stock, . . . shall be held and remain for the
term of six months from and after such sale . . . per-
sonally liable to the amount of the stock so as aforesaid
sold . . . for the payment of all debts and liabilities
of such bank or banking association existing at the time of
such sale, transfer or assignment." That appellant's tes-
tator was a stockholder, and that the stock remained in his
estate, and the property in trust of his executors, until May
6, 1897, and was then transferred, is conceded; also, that
this action was commenced under secs. 3218, 3219, by Mars-
den as a stockholder merely on October 19th, that his com-
plaint was amended so as to allege that he was also a
creditor on November 8th, and that further amendment
joining Rebecca Morgan as a party defendant and service
of summons upon her occurred March 11, 1898. It is con-
tended on the one hand that no suit can be maintained on
this liability if it had expired by the statutory six-months
limitation before the commencement of the action, and that
the action was not commenced against the party sought to
be charged until after that period had expired. On the
other hand, it is contended that the general action, which
might involve the enforcement of this liability, having been
commenced on October 19th, within six months after the
transfer of I. P. Morgan's stock, the creditors are entitled
to hold the estate of I. P. Morgan, and, that having been

distributed, to hold the residuary legatee, Rebecca Morgan, and, she having since died, to hold her administrator.

The maintenance of such an action as this in the circuit court against the estate of the deceased person, instead of the presentation of claim in the county court against that estate, has already received adequate discussion and decision in *Gianella v. Bigelow*, 96 Wis. 185; and we entertain no doubt that the rights of recovery of this liability are the same against the appellant as they would have been against I. P. Morgan if living. We must therefore proceed to consider the force of our statutes above mentioned.

Subsec. 16 differs radically from the provisions on the same general subject in other states, and there are cited to us no decisions from other states helpful upon its construction. Some statutes with more or less clearness extend the liability of a transferrer, not to the then creditors for a term of six months, but to all who shall become creditors within a term of six months; thus warranting a construction to the effect that the class to whom liability shall exist only is limited by that term, and the liability, having arisen, may be enforced when the creditors choose, subject only to the general limitations upon actions. Such construction is clearly excluded by our statute. The liability is limited to those who are creditors at the time of the transfer, and, if that liability were intended to be enforceable at any time within the ordinary period for bringing actions, the clause "for a term of six months" would be meaningless. That clause can have but one significance, and that its obvious one,— namely, that at any moment within the specified period there exists a liability from the transferring stockholder to each and all of the defined class of creditors on which suit can be brought (the form of such suit needing to be in compliance with the holdings of this court from *Coleman v. White*, 14 Wis. 700, to *Eau Claire Nat. Bank v. Benson*, 106 Wis. 624), and that after such six months he is not

liable at all.   Hence the only reasonable construction seems
to be that, if a suit is commenced while that liability exists,
the creditors are entitled to recover, but, after such liability
has expired, no action can be maintained or serve to re-
vive it.

It being essential, then, that the action be commenced
against the ex-stockholder within six months after the trans-
fer, we must consider what constitutes such commencement.
The liability thus imposed is a personal and separate one of
each stockholder, and while, for convenience, it can be prop-
erly ascertained and enforced only in an action which brings
before the court all creditors and all stockholders upon
whom the liability is to be fixed and among whom it is to
be adjusted, yet in ultimate analysis it is a direct, personal,
and legal liability of the individual.   That it cannot be ad-
judicated and enforced against him without making him a
party to the action is at least inferentially decided in *Fin-
ney v. Guy*, 106 Wis. 256.   In that case a contrary doctrine,
suggested by the Minnesota court in *Harper v. Carroll*, 62
Minn. 152, which is now urged upon us by the respondent,
was repudiated.   The necessity that the stockholder shall
have been brought before the court by service of process as
fully and completely as in any other action against him is
recognized and certainly intimated by all our decisions on
the subject, among which *Foster v. Posson*, 105 Wis. 99;
*Finney v. Guy, supra*, and *Eau Claire Nat. Bank v. Benson*,
*supra*, may be mentioned.

It must not be forgotten that, while proceedings in equity
to close up a banking corporation may include recovery of
stockholders' statutory liability, they equally may not; for
assets of the corporation or other liabilities to creditors,
equitably prior to this, may satisfy all creditors.   It is there-
fore an unwarranted presumption that an action seeking to
enforce some of the rights of creditors is necessarily one to
enforce all.   *Gager v. Marsden*, 101 Wis. 598, 603.   The only

safe course, which, while protecting diligent creditors, still
gives full protection of this statute to stockholders, is to
construe these actions like others,— measure the cause of
action by the complaint, and deem them commenced against
any defendant when, and only when, any other would be so
deemed.    On this subject sec. 4239, Stats. 1898, fixes the
service of summons as the commencement of an action, ex-
cept for cases where a diligent attempt to make service may
suffice, under sec. 4240.    This statute would seem sufficiently
unambiguous to conclude the question.    It is, however, con-
firmed by the holding in *Levy v. Wilcox*, 96 Wis. 127, that,
however necessary a party may be to the general purpose of
an action, it is not commenced against him until he is act-
ually and by name brought in.    The conclusion seems irre-
sistible that no suit was commenced to enforce the liability
of I. P. Morgan's estate until March 11, 1898, some four
months after that liability had expired, and that, conse-
quently, judgment therefor against the administrator of his
residuary legatee is erroneous.

2. *Stock Subscription Liability.*    It appeared and was
found by the court that I. P. Morgan, in 1880 and 1885, re-
ceived certificates of stock, purporting to be full-paid, for
$1,000 par value, for which he in fact paid into the capital
of the bank but $300.    It quite clearly appears, however,
that this was by contract between him and the corporation
that he should not be under obligation to pay anything
more.    That contract is evidenced by the action of the cor-
poration in 1885, when by resolution it attempted to pay
for said stock with assets of the corporation, treated and
declared as profits, but which were not profits.    There can
be no doubt whatever that, as between creditors and a stock
subscriber, the latter is liable to make good any known or
fraudulent deficit between the amount paid by him and the
face value of his stock; but the first question is whether,
under such circumstances as here presented, this is a liabil-

ity to the corporation, or a liability enforceable only by the creditors, in derogation of the contract between the corporation and its stockholder, as a fraud upon them. If the former it might perhaps be barred by statutes of limitation, or lost by failure to present in county court against the estate of I. P. Morgan. If the latter, no such defense could be urged. Respondent has discussed the situation and appellant cited authorities as if the attempt here were to collect upon an actual contract to pay par value for subscribed stock, and as if the transfer to W. H. Morgan were of concededly part-paid stock. In that respect they are clearly wrong. As between the corporation and I. P. Morgan there was never anything due for these two shares of stock, certainly after 1885. As between it and a transferee for full value, relying on the certificate of full payment, no recovery could be had, though perhaps as to either the corporation might defensively raise the shield of our statute (sec. 1753, Stats. 1898) declaring such stock void. *First Ave. L. Co. v. Parker*, 111 Wis. 1. The corporation could bind itself to accept anything in full payment for stock, so that it could recover nothing more. *Wells v. Green Bay & M. C. Co.* 90 Wis. 442, 452; *Gilman v. Gross*, 97 Wis. 224, 227; 2 Beach, Priv. Corp. §§ 559, 561. But any such contract between corporation and stockholders may be attacked by subsequent creditors, and, if fraudulent as to them, they may demand its repudiation and payment by the stockholder as if it had never been made. *Gogebic I. Co. v. Iron Chief M. Co.* 78 Wis. 427. While by legal fiction it is said that in such proceeding the creditors recover in the right of the corporation, it is still true that they enforce rights which the corporation did not have, and are not precluded from their suit by statutes of limitation, nor by other omissions of the corporation to proceed against the stockholder. That the transaction between the corporation and the stockholder I. P. Morgan, whereby the former accepted, **in discharge**

Gager and others vs. Paul.

of his liability to pay money or its equivalent for his stock, his proportion of an entirely fictitious accumulation of profits, was fraudulent as to creditors, cannot be doubted.

Much that is said in *Gogebic I. Co. v. Iron Chief M. Co.*, *supra*, is directly applicable; but the present case is even stronger. While the acceptance of property, real or personal, mining rights and the like, at an agreed valuation, is to be viewed with consideration of the fact that opinions as to the value of such property differ widely, and that there is possibility that the parties honestly met and dealt upon an estimate of value widely different from that which may appear to the court, it cannot be believed that the corporation and its stockholders are free from fraud against creditors when they indulge in the destruction of the rights of the former by mere manipulation of accounts. If the corporation is insolvent, they know it, or are chargeable with knowledge of it. They must act in peril of that fact, and no intendment or presumption can be indulged that, with the most complete knowledge of the assets and liabilities of the bank, they can have believed in the existence of a surplus when there was none. The transaction is further distinguished from mere acceptance of property, in that it is manipulation of existing conditions only. No new article of property comes into the ownership of the corporation, as to the value of which opinions might differ. Merely by entries upon the books, that which the bank before had as representing $25,000 of capital is called $50,000, and the public invited to become creditors on the faith of the declaration of that fact. We think it plain, therefore, that the demand now made for payment to the receiver or to the creditors of enough to make up the original par value of the two shares of stock of I. P. Morgan is fully sustained by the facts, and that it is a cause of action which never existed in the corporation, and which the creditors never had an opportunity to enforce against the estate of

I. P. Morgan, for the reason that they never had a cause of action at law, but merely a right to sue in equity, where they must necessarily join the corporation and proceed in a manner not possible in county court. *Gianella v. Bigelow*, 96 Wis. 185; *Morey v. Fish Bros. W. Co.* 108 Wis. 520. Hence no obstacle exists to its enforcement now against the residuary legatee, to whom has passed that portion of his estate out of which should be paid any liabilities resting upon her testator. The award of judgment against the appellant for the $700 and interest upon this liability was correct.

3. *Dividends.* These were paid to I. P. Morgan and to his executors from 1890 to 1896, during all of which time, not only was the corporate capital impaired, but the corporation was actually insolvent. Such payments were prohibited by subsec. 40 of the banking act, as, indeed, by the general principles of the law governing corporations. But the question at once arises as to the effect of disobedience of such prohibition. Of course, the stockholder receiving such dividends unlawfully has no right to retain them; but is his liability to repay owed to the corporation and enforceable by it, or can he only be called to account at the suit of creditors defrauded by the payment? The question seems to have been answered by this court, though perhaps not on the fullest consideration. In *Hurlbut v. Marshall*, 62 Wis. 590, 606, in speaking of liability for unlawful receipt of dividends, it is said:

"If the officers, directors, or stockholders, or any one else, have taken and carried away and converted the property or funds of the bank wrongfully and unlawfully or criminally, they are trustees of the bank and remotely of the creditors,— trustees *de son tort*, it may be, but nevertheless trustees,— and may be compelled in this suit to account therefor."

In *Hurlbut v. Tayler*, 62 Wis. 607, 615, it is said of such a stockholder:

"The respondent is liable in this action, like all other persons who have unlawfully become possessed of the funds of this insolvent bank, *to return them to the bank* for the benefit of its creditors."

In *Killen v. Barnes*, 106 Wis. 546, the liability for unlawful dividends is treated as owing to the corporation and to its assignee. Sec. 1765, which prohibits payment of dividends by insolvent corporations generally, seems to recognize that, in case of breach, liability is to the corporation, by providing that such liability is to *restore* the full amount, except in certain cases. Restoration can be made only to the source from which the dividends came. Mr. Thompson assumes, as of course, that the corporation can reclaim an *ultra vires* dividend. Thomp. Corp. §§ 2135, 3555. See, also, *Lexington L., F. & M. Ins. Co. v. Page*, 17 B. Mon. 412; *Hayden v. Thompson*, 71 Fed. Rep. 60, 65. We see no reason to hesitate in adopting the views thus stated and intimated. The dividends received by a stockholder contrary to law are but property of the corporation unlawfully taken into the possession of another, and upon every principle of law and every reason of its policy the owner should have the right to recover it by direct action. This view in no wise militates against the right of one interested either as creditor or stockholder to invoke the aid of a court of equity to compel restitution of such unlawful dividends when the corporation will not reclaim them; but, when he does so, he merely enforces the right which the corporation has, and the relief granted must be measured by that right. Insisting upon that view, appellant urges that the right of the corporation to recover those dividends paid more than six years before the commencement of the action is barred by the statute of limitations. The answer of the appellant administrator, however, did not plead the statute, and if he were defending in his own right it would be waived. This suggests the interesting question whether, when the circuit

court, in the exercise of its equity powers, takes jurisdiction to adjudicate claims against estates of decedents, it ought not to limit itself in allowing them by the policy of sec. 3841, providing as to county courts that " no claim barred by the statute of limitations shall be allowed by the court in favor of or against the estate, as a setoff or otherwise."

That question, however, we need not decide, since we have concluded that another and insuperable obstacle prevents recovery against this appellant or his decedent of any of these dividends. The action against Rebecca Morgan, revived against her administrator, could only be maintained by virtue of our statutes and upon the condition specified by sec. 3845: " When no time has been fixed in which creditors may present their claims against the deceased for allowance or when no notice of such limitations has been ordered or given." The complaint and record are both silent as to whether a time was limited for presentation of claims against the estate of I. P. Morgan, deceased, or notice given. It is essential that one seeking to sue a legatee or next of kin on a claim that might have been proved in county court should allege and prove that these steps were not taken; otherwise, it will be presumed that they were. *Lannon v. Hackett,* 49 Wis. 261. That this demand in favor of the corporation was one provable in county court cannot be doubted. The distinctions in that respect are fully explained in *Lannon v. Hackett, supra; Bostwick v. Estate of Dickson,* 65 Wis. 593; *Gianella v. Bigelow,* 96 Wis. 185; and *Morey v. Fish Bros. W. Co.* 108 Wis. 520. The right of the corporation was to a mere money recovery for the amount of the unlawful dividends Morgan had received. Its adjudication involved no questions of contribution, and no parties defendant other than I. P. Morgan, nor did it require the exercise of equitable powers over specific property. It was a simple money claim, within the jurisdiction and power of the county court, and cannot be enforced against next of kin or lega-

tees if opportunity to prove it against the estate was duly given. Of course, if these plaintiffs had commenced their present action while the corporation still had a right of procedure and recovery against Morgan's estate, a different situation would be presented. They would then have been permitted to sue in circuit court, because of the necessity of joining the corporation as a defendant. *Morey v. Fish Bros. W. Co., supra.* But they cannot now, after the liability to the corporation has been extinguished, recover in its right what it could not have recovered at the time their action was commenced. The award of judgment against appellant for the dividends was erroneous.

Appellant assigns error upon the taking of evidence at the time when the order to show cause was returnable, and cites us to rules and decisions against the taking of oral evidence upon a motion. This is a confusion of the situation. The court apparently disposed of the motion to authorize settlement, and then proceeded to the trial of the remaining issues in the cause by virtue of its presence on the calendar under due notice of trial. This was within the discretionary power of the court over its calendar, and was not an abuse of that discretion. No error is apparent in this respect.

There is some evidence that, when he took the first share of stock, I. P. Morgan gave a stock note, and there is no evidence what became of it. Appellant contends that the court should have presumed payment of the whole note, and held him liable for no more than the $500 for the second share of stock. If any such presumption results, it is entirely overcome by other evidence. It is in testimony that he paid but sixty per cent. of the first $500 and none of the second, and the resolution of the stockholders in 1885, whereby the remaining forty per cent. of his first stock subscription was attempted to be paid out of his share of accumulated profits, is sufficient to justify the finding against

the payment in any other manner of any more than sixty per cent. upon the stock.

Other assignments of error urged by the appellant are rendered immaterial by the conclusions which we have reached upon the several questions, as a result whereof it is apparent that the judgment against this appellant should be modified by striking out therefrom all except the $700 for the subscription price of the stock issued to I. P. Morgan, with interest thereon.

A brief is filed on behalf of W. H. Morgan, against whom certain liabilities were adjudged as an assignee of the same stock. A portion of this brief is devoted to a defense of the judgment against the appellant, *John Paul.* In that respect he stands in the attitude of a respondent; but another portion of the brief is devoted to criticism of the judgment as against him, and requests a modification and reduction thereof. For that purpose he has no standing, as he has not appealed, and cannot be heard to attack the judgment.

*By the Court.*— The judgment against the appellant, *John Paul,* as special administrator of Rebecca Morgan, deceased, is modified by striking therefrom all sums adjudged as damages against him, either separately or jointly with another, except the sum of $734.39, and as so modified is affirmed; the appellant to recover costs of this appeal.