CLARK, County Judge, and others, Respondents, vs. SLOAN and others, Appellants.

*April 4—May 8, 1934.*

424

For the appellants there was a brief by *Hill & Miller* of Baraboo, and oral argument by *J. H. Hill*.

For the respondents there was a brief by *Loomis & Roswell* of Mauston and *J. T. Dithmar* of Elroy, and oral argument by *Orlando S. Loomis*.

WICKHEM, J. Charles E. Nance died on March 17, 1919, intestate. On July 26, 1909, he married defendant Hortense Sloan, who, for purposes of convenience, will hereafter be referred to by this name. At this time, decedent had no property, but after his marriage the couple moved to Elroy, engaged in business, and accumulated some estate. After his death, Hortense Sloan proceeded to settle his estate in the county court of Juneau county. The petition for final settlement was filed November 18, 1919, and final judgment was entered December 16, 1919. The estate consisted of some real estate, not involved on this appeal, and a residue of personal property of the value of $965.90. As administratrix, Hortense Sloan gave a bond in the penal sum of $3,300, with defendant L. S. Marsh as one and C. S. Huntley as the other surety. Huntley died in 1923. Final judgment of distribution in his estate was entered July 3, 1923, and the estate divided among his legatees and devisees.

On October 25, 1928, plaintiffs Della Ake, Mary Etta Van Meter, and Daisy Workman filed separate petitions in the county court of Juneau county, asking to set aside the decree of the court of December 16, 1919, upon the ground that Della Ake was the widow of Charles E. Nance, and Mary Etta Van Meter and Daisy Workman his daughters;

that Hortense Sloan had fraudulently induced the court to enter the decree by concealing the fact of the existence of a lawful widow and children of Nance. The facts which Della Ake and Mary Etta Van Meter and Daisy Workman assert to exist and to support their claims are as follows:

For some time prior to November 16, 1895, Charles E. Nance and plaintiff, Della Ake, then known as Della Payne, were residents of Lawrence county, Ohio. On this date they were married. On January 23, 1896, Mary Etta Van Meter was born. This child was conceived before marriage, and was the natural child of Nance and Della Payne. The child was born at the home of Nance and his parents. The lying-in expenses were paid for by Nance, and the plaintiff, Della Nance, together with the daughter, lived in the home of Nance and his parents, with him, for about nine months following the birth of Mary Etta. In the fall of 1896, or about nine months after the birth, Nance deserted his wife and child and was gone from the vicinity for nearly two years. Nance returned to Ohio in the fall of 1898, and re-sumed relations with his wife. Daisy Workman was born to Charles and Della Nance in March, 1899. Nance again deserted his wife, and never returned to her. He went to Hillsboro, Wisconsin, where he lived with two brothers and a sister. As heretofore stated, he later married Hortense Sloan, without disclosing to her his previous marriage. Meantime information had come to Della Nance, in the year 1900, through the mother of Charles Nance, that Charles had died at Hillsboro due to injuries received from the kick of a horse. Believing the story to be true, Della Nance in form married William Ake, with whom she lived and had other children, until Ake died in 1927. During this period Mary Etta Van Meter and Daisy Workman did not live or associate together, and due to the unfortunate circumstances of her birth, contacts were not maintained between Della Ake and Daisy Workman with Mary Etta. The evidence

upon which the claim of fraud against Hortense Sloan rests is that during the course of administration of the Nance estate, Daisy Workman, having received a report that Charles E. Nance was alive, wrote to him and received a reply from Hortense Sloan. According to Daisy Workman, she wrote that she had heard that her father was alive and would like to hear from him. Her statement was that she received an answer from Hortense Sloan that her father had died in March. She received this letter in the fall of 1919. The letter disclosed that Hortense Sloan claimed to be her father's widow. Daisy paid no further attention to the matter, and made no further investigation until June or July, 1927. Hortense Sloan admits receiving the letter. Her version of its contents and her reply are somewhat different. She states that she received a letter from a girl in Ohio, signing her name as Daisy Ake, stating that she was a daughter of Charles Nance; that she had seen an attorney and was entitled to a part of the estate, and that she had a sister. Hortense Sloan claims·to have written to Daisy, at the suggestion of her attorney, stating that if Daisy could prove she was a legal heir, she was entitled to a share in the estate, and that her sister was entitled to as much as she was. The failure of Hortense Sloan to investigate or to report the contents of this letter to the court was claimed to constitute a fraud upon the court.

After a full hearing the county court filed findings of fact and conclusions of law. The court found: "That the administratrix, ·Hortense N. Nance, now known as Hortense N. Sloan, falsely and fraudulently retained and failed to disclose to Daisy Nance, now Daisy Workman," the fact that her father had died leaving an estate in which she was entitled to share. The court further found that Hortense Sloan made no investigation to determine who the heirs of Charles E. Nance, deceased, were, and "erroneously and fraudulently represented herself to the county court of

Juneau county, Wisconsin, to be the widow of Charles E. Nance, deceased, and his sole and only heir at law, and purposely failed and neglected to present to the county court of Juneau county, Wisconsin, any evidence as to who might be the true and correct and sole and only heirs at law of said Charles E. Nance, deceased." Upon these findings and upon findings establishing the widowhood of Della Ake, the relation of Mary Etta Van Meter and Daisy Workman to Nance, and absence of laches, it was ordered and adjudged that the decree of December 16, 1919, allowing the final account of Hortense Sloan and assigning the real estate and personal property of said Charles E. Nance to her, was null and void and was vacated and set aside. Thereupon W. G. Hosig was appointed administrator *de bonis non*. It was further adjudged that Hortense Sloan account and pay into court all sums and property received by her in the distribution of the estate of Charles Nance. In this action the trial court's findings are substantially identical, so far as the principal issues are concerned.

It is earnestly contended, and ably argued, that the findings of the trial court are not sustained by the evidence. We are of the opinion that the contention is not sound, and further that it is immaterial, for the reason that the judgment of the county court, standing unreversed, is *res adjudicata* as between Della Ake and her daughters, on the one hand, and the administratrix and her sureties, on the other. The issues were identical, were there fully tried, and cannot be relitigated in this action. That the judgment of the county court is binding upon the sureties, although not parties in the proceedings, is well established. *Meyer v. Barth*, 97 Wis. 352, 72 N. W. 748; *Holden v. Curry*, 85 Wis. 504, 55 N. W. 965; *Schoenleber v. Burkhardt*, 94 Wis. 575, 69 N. W. 343; *Shepard v. Pebbles*, 38 Wis. 373.

It is true that had the discharge of the administratrix been the result of mere error and not fraud, the final settlement

would have discharged the sureties. *Brennan v. Moon*, 211 Wis. 304, 247 N. W. 837; *Cook v. Nelson*, 209 Wis. 224, 244 N. W. 615.

The next contention is made on behalf of the legatees of Huntley, and is based upon the fact that he died in 1923, and that his estate was fully settled in that year. It is contended that a claim should have been filed against Huntley's estate and that it is now barred by the statutes of non-claim. The difficulty with this contention is that the claim did not exist during the pendency of settlement of the Huntley estate. At that time Huntley stood discharged from his liability upon the bond by virtue of the final adjudication in 1919. This liability could only be revived by a judgment setting aside the final decree of 1919 as a result of proof that the administrator had been guilty of fraud upon the court. The liability was contingent upon the discovery and establishment of such fraud. Defendants counter with the claim that this fraud existed in 1919, as did the right to have the proceedings of that year set aside and vacated; that this right was perfect in 1923, the only difficulty being that those entitled to take advantage of the fraud were not aware of the facts so entitling them until 1927. Defendants assert that this presents the case of an undiscovered claim rather than a contingent one. This position is ably maintained, and the matter is not without difficulty. We think, however, that under the doctrine of *Mann v. Everts*, 64 Wis. 372, 25 N. W. 209, no claim was in existence until long after the estate of Huntley had been settled, and no claim existed that could have been filed during the pendency of settlement. See *Blakely v. Smock*, 96 Wis. 611, 71 N. W. 1052; *South Milwaukee Co. v. Murphy*, 112 Wis. 614, 88 N. W. 583; and *Wallber v. Wilmanns*, 116 Wis. 246, 93 N. W. 47; *Nathan v. Freeman*, 70 Mont. 259, 225 Pac. 1015, 41 A. L. R. 138. Consequently the claim is not barred by statutes of non-claim, and plaintiffs are entitled to prosecute an action against the

legatees provided the cause of action has not been limited by some applicable statute of limitations. In this connection it should be pointed out that whatever undiscovered cause of action plaintiffs had prior to 1923 was against Hortense Sloan for fraud practiced upon the court in securing a final settlement of the Nance estate. It is true that the successful establishment of this fraud would lead to the setting aside of the final settlement of 1919, and a revival of the liability of the sureties. The judgment vacating the settlement, however, was the event that created the claim against the sureties where none had previously existed during the interval between the settlement of 1919 and the judgment vacating this settlement. Thus plaintiffs' cause of action against the sureties was not merely undiscovered, but was contingent upon plaintiffs' success in establishing a cause of action against a person other than the sureties.

It is next contended that plaintiffs' claim against the legatees is barred by the statute of limitations. Defendants contend that the liability created against the sureties by sec. 287.18 and following sections is purely statutory and not contractual in the sense of being based upon the bond given by the surety-testator. The sections referred to, under certain circumstances and subject to certain conditions, permit an action against the legatees of a deceased person to recover the value of assets that may have been paid to them by any executor or administrator. Such actions lie in favor of those having claims against the deceased. The limitation asserted to be applicable to such a cause of action is that prescribed by sec. 330.19 (4): "Within six years: . . . (4) An action upon a liability created by statute when a different limitation is not prescribed by law." The phrase "within six years" relates back to sec. 330.15, which makes the time prescribed in the sections immediately following to run from the time the cause of action accrued. The cause of action against the devisees of Huntley did not accrue until

the vacating of the judgment of 1919. There existed no cause of action whatever against them until such time. Hence, assuming, without deciding, that sec. 330.19 is the applicable section, it must be held that the claim is not barred.

It is next asserted on behalf of Hortense Sloan that the trial court, upon refusal to affirm defendant Sloan's marriage to Nance, should have retained jurisdiction and awarded her such relief as she was entitled to receive, measured in terms of money damages. The contention is based upon the well-established rule that if a person, in good faith, brings an action in equity alleging facts sufficient to constitute a good cause of action within some recognized rule of equity jurisprudence, and by his proofs establishes a state of facts entitling him to some relief by way of damages or otherwise, though failing to prove some fact essential to the relief sought, the court will not dismiss the action, but will retain it and render such judgment as will do complete justice between the parties. *Franey v. Warner*, 96 Wis. 222, 71 N. W. 81; *Maloney v. Warner*, 96 Wis. 238, 71 N. W. 1119; *Cole v. Getzinger*, 96 Wis. 559, 71 N. W. 75; *Hall v. Delaplaine*, 5 Wis. 206. An examination of the pleadings satisfies us that defendant Sloan is not within this rule. In what is designated a special defense, but amounts, at least in some of its aspects, to an equitable counter-claim, defendant alleges that she married Nance in reliance upon his representation that he was single, and that she thereafter lived with him in good faith supposing herself to be his lawful wife. It is alleged that this marriage has been challenged by plaintiffs, and that the county court has found the plaintiff Della Ake to have been the lawful wife of Nance, and the other plaintiffs his lawful issue; that if Nance was lawfully married to Della Ake and never divorced, this fact was fully known to him, and his conduct in inducing defendant Sloan to marry him was fraudulent. The court is asked to affirm defendant's marriage to Nance, and in the event of a

refusal so to do, that defendant have judgment for $10,000, and that the same be an offset against plaintiffs' recovery. There are no allegations in this pleading entitling defendant to have her marriage affirmed. The pleading does not allege that defendant is the widow of Nance, and so far as it may be said to show anything with respect to this matter, it discloses that plaintiff Della Ake has been adjudicated by the county court to have been the lawful wife of Nance at the time of his death. The closest that the pleading comes to asserting the contrary are various statements that if defendant was not the wife of Nance, she nevertheless married in good faith and in reliance upon his fraudulent representations. This being true, the defendant has stated no cause of action for the equitable relief demanded, and the case falls within the doctrine of *Stockhausen v. Oehler,* 186 Wis. 277, 201 N. W. 823, where it is stated that a court of equity will retain jurisdiction to grant legal relief only where it appears that an equitable cause of action growing out of the transaction existed prior to the commencement of the action; that the equitable action was commenced in good faith to secure equitable relief; that such equitable relief cannot be had or is impracticable; that the constitutional right of trial by jury will not be denied by retaining the action and granting legal relief, and that the ends of justice will be best subserved by retaining the cause for final determination. Neither the pleadings nor the proof show defendant to have any right to have her marriage affirmed.

By *the Court.*—Judgment affirmed.