·SCHAFER and others, Commissioners of Banking, Respondents, vs. BELLIN MEMORIAL HOSPITAL OF THE WISCONSIN CONFERENCE OF THE METHODIST EPISCOPAL CHURCH, and another, Appellants.

*September 12—December 3, 1935.*

C. W. Lomas of Green Bay, for the appellant Bellin Memorial Hospital.

Rud. W. Talsky of Milwaukee, for the appellant Wisconsin Conference Board of Trustees of the Methodist Episcopal Church.

For the respondents there was a brief by Thorson & Seymour of Elkhorn, and oral argument by Arthur T. Thorson and J. E. Messerschmidt, assistant attorney general.

FRITZ, J.   Upon the motion of the respondents the attempted appeal of the Wisconsin Conference Board must be dismissed because it failed to take and perfect its own appeal within thirty days after service upon it of the notice of appeal taken by the Bellin Hospital.   Sec. 274.12, Stats., provides:

"In case one of a number of parties jointly or severally bound by the same judgment appeals therefrom, he shall serve his notice of appeal on all parties who are bound with him by the judgment, and said parties shall thereupon within

thirty days after such service, unless the time be extended by the trial court for cause shown, take and perfect their own appeals. or be deemed to have waived their right to appeal."

Under that section, upon the failure of the Wisconsin Conference Board to take and perfect its appeal within thirty days after service upon it by the Bellin Hospital of its notice of appeal, it was necessary for the Wisconsin Conference Board, in order to save its right of appeal, to apply to the trial court and have its time for taking that appeal within that thirty-day period duly extended by that court for cause shown. Because of its failure to get such extension of time from the trial court, it must be "deemed to have waived the appeal." If its delay was due to the necessity of communications and conferences between its attorney and its members, that might have constituted a showing of good cause upon which the trial court would have extended the time for appeal; but an application for such relief must be addressed to, and can only be acted upon by that court. "The right to appeal in civil proceedings is purely statutory and does not exist at all except when, and then only to the extent, granted by statute." *Golden v. Green Bay Metropolitan Sewerage Dist.* 210 Wis. 193, 200, 246 N. W. 505. It follows that because of the failure of the Wisconsin Conference Board to comply with the requirements of sec. 274.12, Stats., in taking and perfecting its appeal, it must be deemed to have waived its appeal; and, therefore, the respondents' motion to dismiss must be granted. *Joachim v. Wisconsin Dental Clinic, ante,* p. 35, 261 N. W. 745.

On its appeal the Bellin Hospital contends: (1) That this action to recover from the defendants under secs. 287.18 to 287.21, Stats., as recipients of residuary legacies under the will of D. J. Williams, deceased, the amount of the double liability under sec. 221.42, Stats., on nine shares of stock

of the State Bank of Elkhorn, is not an action to recover "a debt . . . arising on a contract, express or implied, sealed or not sealed, or on a judgment for a stated sum," within those terms as used in the summary-judgment statute, sec. 270.635, Stats.; and, therefore, plaintiffs were not entitled to proceed under that statute; (2) that the double liability under sec. 221.42, Stats., which plaintiffs seek to recover in this action became due on June 18, 1932, and that by virtue of sec. 313.08, Stats., the claim became barred because of the failure to file it in the probate proceedings in the administration of Williams' estate by April 29, 1932, the time limit set under secs. 313.03 (1) and (2), Stats., for that purpose, or to obtain an extension of that time under sec. 313.03 (1), Stats., or to proceed under sec. 313.24, Stats. 1931; and (3) that the attempted imposition of a new liability by sec. 220.07 (20), Stats. (ch. 17, Laws of 1933, effective February 28, 1933, in so far as it provides that the double liability provided by sec. 221.42, Stats., shall forthwith become due whenever a stabilization and readjustment agreement, entered into between any bank and its depositors and unsecured creditors, has been approved by the Commissioner of Banking), upon a stockholder on stock issued before its enactment and for the payment of indebtedness previously incurred, would impair the obligations of the contract between a bank and its stockholders and would therefore be unconstitutional and void.

The consideration of those contentions necessitates noting the following facts stated in the complaint and the affidavits filed on plaintiffs' motion for summary judgment: When Williams died testate on December 23, 1931, he owned nine shares of stock of the State Bank of Elkhorn, and also other property. His will was admitted to probate on January 26, 1932, and the time for filing claims was limited to April 29, 1932. On September 27, 1932, the probate court, by its

final order of distribution, divided those nine shares of bank stock among the defendants; and, in connection therewith assigned to each of them, as residuary legatees, certain other assets which were valued at $16,000. They refused to accept the bank stock, but did accept the other assets. On Saturday, June 18, 1932, at 3 p. m., which was the bank's regular closing hour, it suspended business, the plaintiffs took charge of the bank for the purpose of having it enter into an agreement of stabilization and readjustment with its depositors and unsecured creditors, and its board of directors adopted a resolution levying a voluntary assessment of one hundred per cent under sec. 220.07, Stats. 1931. On Monday, June 20, 1932, at 9 a. m., the bank opened its doors as usual and continued business in the regular way. Thereafter, a stabilization and readjustment agreement, entered into between the bank and sufficient depositors and unsecured creditors, was approved on January 26, 1934, by an order made by the Banking Commission. Up to February 28, 1933, sec. 221.42, Stats., relating to the contingent double liability of bank stockholders for the benefit of creditors of the bank, provided that: "Such liability shall accrue and become due and payable as to the stockholders of any bank forthwith, upon the commissioner of banking taking possession of the property and business of such bank under the provisions of the statutes." In February, 1933, the legislature by enacting ch. 17, Laws of 1933, effective February 28, 1933, created sec. 220.07 (20), Stats., which provided:

"Whenever a stabilization and readjustment agreement entered into between any bank and the depositors and unsecured creditors of such bank has been approved by the commissioner of banking, the double liability provided by section 221.42 shall forthwith become due and the payment thereof by the stockholders of such bank shall be enforced by the commissioner of banking in the manner provided by

said section 221.42 or in some other manner as he may deem advisable. All proceeds therefrom shall be for the benefit of the depositors and unsecured creditors existing at the time of the approval of such stabilization and readjustment agreement by the commissioner of banking. . . ."

On January 26, 1934, the Banking Commission, in connection with its approval of the stabilization agreement, made an order under sec. 220.07 (20), Stats. 1933, declaring the double liability under sec. 221.42, Stats., to be forthwith due and payable, and demanding that each stockholder pay the same to the bank's cashier, who, as agent for the commission, was to deposit the collections in a special account in the name of the commission and subject to its order. On January 29, 1934, the plaintiffs demanded payment by the defendants of that double liability on Williams' stock; and, upon the latter's failure to pay, this action was brought against them under secs. 287.18 and 287.19, Stats., to recover the amount of that liability from them, as the recipients of legacies paid out of Williams' estate. Plaintiffs expressly alleged that the double liability did not become absolute and payable until after the distribution of Williams' estate, pursuant to the final order in probate, and the discharge of his executor; that no assets were delivered to Williams' next of kin; and that plaintiffs have no remedy to recover the amount due otherwise than from the defendants.

The contention that this action is not within the provisions of the summary-judgment statute, sec. 270.635, cannot be sustained. So far as here material that statute is applicable under its terms, "in an action to recover a debt or liquidated demand arising on a contract, express or implied, sealed or not sealed." An action to recover the amount due on account of the double liability of a stockholder under sec. 221.42, Stats., is an action to recover a liquidated demand arising on a contract implied, by virtue of that section as incidental to

the ownership of bank stock. As is said in 14 C. J. p. 973, § 1507:

"The liability created by these ordinary statutes of super-added individual liability is not penal nor statutory, but is contractual in its nature, the theory being that the statute enters into and forms a part of the engagement of the stock-holders when they become members of the corporation, and that each stockholder impliedly contracts with the creditors of the corporation that he will assume the liability declared by the statute in their favor."

Consequently, an action arising on that contractual obliga-tion is an action to which the provisions in sec. 270.635, Stats., are applicable.

In connection with the Bellin Hospital's contention that the claim upon which this action was based had become barred prior to the commencement thereof by the statute of nonclaims, it contends as follows:

(1) That plaintiffs' allegation "that on June 18, 1932, the State Bank of Elkhorn suspended business and the plaintiffs took charge of said bank for the purpose of having said bank enter into an agreement of stabilization and readjust-ment with its depositors and unsecured creditors," must be deemed to mean the "taking possession of the property and business of such bank under the provisions of the statutes," which is the event specified in sec. 221.42, Stats., as the event upon the occurrence of which the double liability of stockholders under that section "shall accrue and become due and payable . . . forthwith;"

(2) That therefore that double liability accrued and be-came payable on June 18, 1932, and the statutes of limita-tions and nonclaims were set running as of that date;

(3) That, although prior to June 18, 1932, the time for filing claims had expired (on April 29, 1932) there were still twelve days of the sixty days within which under sec. 313.03 (1), Stats., an application could be made for an extension of the time for filing claims; or that if plain-tiffs failed to do that, they could, under sec. 313.24, Stats. 1931, on a claim which accrued or became absolute after the

time limited for creditors to present claims, "present it to the county court and prove the same at any time within one year after it shall accrue or become absolute," and that if thus established the executor would be required to pay it or so much of it as he had sufficient assets for payment.

At the time that the bank suspended business and the Commissioner of Banking took charge of the bank (on June 18, 1932), a stockholders' contingent double liability under sec. 221.42, Stats., could accrue and become absolute "upon the commissioner of banking taking possession of the property and business of such bank under the provisions of the statutes," and the only provisions which then authorized any such taking of possession were those in secs. 220.08 (1), 221.26, and 221.42, Stats. At that time sec. 220.08 (15), Stats. 1931, provided that whenever the Commissioner of Banking, with a view to restoring the solvency of any bank of which he had taken charge pursuant to law, approved a reorganization plan entered into between the bank or re-organizers and depositors and unsecured creditors representing eighty per cent of the amount of deposits or unsecured claims, then all other depositors and creditors were equally subject to such agreement in the event of the restoration of the bank to solvency and the reopening thereof for business; but in that section there was no such provision as there was subsequently in sec. 220.07 (20), Stats. 1933 (enacted by ch. 17, Laws of 1933, and amended by ch. 362, Laws of 1933), that the double liability provided by sec. 221.42, Stats., became due and payable whenever the Commissioner of Banking approved such a stabilization agreement. When the bank suspended business on June 18, 1932, and the Commissioner of Banking took charge thereof, he apparently did so under the power conferred upon him by sec. 220.08 (1), Stats. 1931, which, among other grounds, authorized him to take possession of the property and business of a bank "if any such bank . . . shall suspend payment of its obliga-

tions." The bank having on June 18, 1932, suspended business, it thereby suspended payment of its obligations and, therefore, the Commissioner of Banking was authorized to and apparently did take charge and possession of it under the provisions of sec. 220.08 (1), Stats. The purposes for which he may have taken charge are immaterial. Even though he did so under the statutes with a view of stabilization does not alter the case. Although an order made subsequently by the Commissioners of Banking on January 26, 1934, purports to have been made pursuant to sec. 220.07 (20), Stats., such order was, as a matter of fact, unnecessary and inoperative because the Commissioner of Banking having theretofore taken possession of the bank on June 18, 1932, under sec. 220.08 (1), Stats., the stockholders' double liability under sec. 221.42, Stats., accrued on that date, under the express provision in the latter section. While under the statutes as they stood in June, 1932, the Commissioner of Banking may have had some discretion with respect to the enforcement of the stockholders' liability under the provisions of sec. 221.42, Stats., he had no power to alter the due date of that obligation as fixed by the statute. The stockholders could not complain because the Commissioner of Banking also proceeded under sec. 220.07 (20), Stats., in respect to an obligation which had already accrued. The pleadings do not disclose what happened between the time the Commissioner of Banking took possession on June 18, 1932, and January 26, 1934, the date of the commission's order under sec. 220.07 (20), Stats. But, whatever happened, throughout that entire period, the liability of stockholders, including D. J. Williams or his estate, had accrued and had become due and owing under the provisions of sec. 221.42, Stats., by virtue of the bank's suspending business and the Commissioner of Banking taking charge of it on that ground on June 18, 1932. Consequently, as on that

date Williams' contingent liability under sec. 221.42, Stats., had become absolute, there was applicable thereto, while the estate was being probated in 1932, sec. 313.23, Stats. 1931, under which the time for filing a claim upon a contingent claim becoming absolute was "within two years from the time limited for other creditors to present their claims;" and there was also applicable thereto sec. 313.24, Stats. 1931, under which, if the claim accrued or became absolute at any time after the ·time limited for creditors to present their claims, the person having such claim was permitted to "present it to the county court and prove the same at any time within one year after it shall accrue or become absolute." Manifestly, under the latter provision, when the time for filing accrued claims expired in April, 1932, there existed by virtue of sec. 313.24, Stats. 1931, in respect to the filing of the claim now in suit, a period of one year after it accrued or became absolute; and, consequently, plaintiffs then had until June 18, 1933, for presenting it to the county court and thereby acquiring the right to payment out of the assets of the estate. Although sec. 313.24, Stats. 1931, was subsequently repealed by sec. 25, ch. 190, Laws of 1933 (effective January 1, 1934), as the time thus authorized by sec. 313.24, Stats. 1931, had begun to run before that repeal, the time prescribed by the latter section for acquiring the right to payment out of the assets of Williams' estate was not affected by that repeal in view of sec. 370.06, Stats., which expressly provides that the repeal of such a statute shall apply only to such rights or remedies as shall accrue subsequently to the time when the repealing act shall take effect. That being true, the right to present a claim for the double liability upon its becoming absolute on June 18, 1932, continued, under the statutes in effect in 1932, until June 18, 1933, when the period of one year after it became absolute terminated. As that was after the completion of the administration of

Williams' estate, pursuant to the final order for distribution made on September 27, 1932, the Commissioners of Banking were entitled to maintain this action under secs. 287.19, 287.21, and 287.18, Stats., against the defendants who, as legatees, received the assets of Williams' estate. The facts and circumstances herein sufficiently meet the requirements prescribed in secs. 287.19 and 287.21, Stats., that, "if such action be brought against the next of kin the plaintiff must show that he has been or will be unable, with due diligence, to collect his debt or some part thereof by proceedings in the proper county court or from the personal representative of the deceased," etc. (sec. 287.19) ; and that, "if the action be brought against a legatee or against all the legatees the plaintiff shall not be entitled to recover unless he show . . . the facts required to be shown in an action against the next of kin" (sec. 287.21), and certain other matters, as to the existence of which there is no dispute. In determining whether inability to collect the claim in the county court or from the personal representatives "with due diligence" was sufficiently shown, the fact that by the distribution of the estate in three months after the claim accrued, the plaintiffs were deprived of the remaining nine months of the period of one year allowed by sec. 313.24, Stats. 1931, for presenting the claim in the county court, is of considerable significance. That statutory period of one year constituted the legislative measure in respect to the exercise of due diligence by claimants situated as were the plaintiffs herein. It follows that, as the plaintiffs were allowed, under sec. 313.24, Stats. 1931, a period of one year after the contingent liability on Williams' stock became absolute on June 18, 1932, in which to file the claim in court, and thereby obtain payment out of the estate, but were prevented by the distribution of the estate assets and the discharge of the executor prior to the expiration of that year from having all of that period within which to file

the claim, it had not become barred by the statutes of non-claim, and is a subsisting obligation on which plaintiffs are entitled to recover from the defendants to the extent of the assets received by them as legatees of Williams' estate. *Banking Comm. v. Best, post,* p. 526, 264 N. W. 176; and also *Clark v. Sloan,* 215 Wis. 423, 254 N. W. 653; *Mann v. Everts,* 64 Wis. 372, 25 N. W. 209; *Gager v. Paul,* 111 Wis. 638, 87 N. W. 875; *South Milwaukee Co. v. Murphy,* 112 Wis. 614, 88 N. W. 583. The decision in *Banking Comm. v. Muzik,* 216 Wis. 596, 257 N. W. 174, is not in point because in that case the stockholders' liability had become absolute during the lifetime of the stockholder.

As the double liability on account of the stock held by Williams became absolute on June 18, 1932, under a provision in sec. 221.42, Stats. 1931, and not by virtue of the provisions of sec. 220.07 (20), Stats. 1933, or the inoperative order made thereunder by the commissioners on January 26, 1934, it is not necessary to pass upon appellant's contention that sec. 220.07 (20), Stats. 1933, would impair the obligations of contracts and therefore be unconstitutional, if applicable to stock previously issued and to the payment of debts previously incurred.

*By the Court.*—The appeal taken by the Wisconsin Conference Board of Trustees of the Methodist Episcopal Church, trustees for the Wisconsin Methodist Episcopal Pension Fund, is dismissed.

Judgment affirmed on the appeal by the Bellin Memorial Hospital of the Wisconsin Conference of the Methodist Episcopal Church.