SCHWENKER, Commissioner of Banking, Respondent,. vs. BEKKEDAL and others, imp., Appellants.

*February 10—May 12, 1931.*

548

For the appellant Bekkedal there was a brief by *C. W. Graves* of Viroqua, attorney, and *Goggins, Brazeau & Graves* of Wisconsin Rapids of counsel, and oral argument by *R. B. Graves* and *C. W. Graves*.

*John J. Fisher* of Bayfield, for the appellants J. M. Black and Belle Leihy.

For the respondent there was a brief by *Walsh & Morris* of Washburn and *William F. Morris* of De Pere, and oral argument by *Charles F. Morris*.

FOWLER, J. The appellant Bekkedal claims that the court erred: (1) in finding that he owned stock of the bank; (2) in holding that the suits against the individual stockholders did not waive recovery of the superadded statutory liability of defendants herein; (3) in concluding that expense of liquidation should be included in making up the deficit for which the stockholders are finally liable; (4) in entering judgment, if he is held to own stock, for a greater sum than that computed by taking such proportion of the deficit as his stock bears to the total stock of the bank. The other appellants make identical claims, except as to (1). We shall first consider the identical claims of appellants, and it seems more orderly to consider them in the reverse order in which they are above stated.

(4) It does not appear whether the respondent accepts as correct the conclusion of the trial court that the superadded

liability of an individual stockholder of a bank is not, as we believe it is generally understood to be, an amount equal to the par value of his stock, but such proportion of the difference between the total amounts of debts plus expenses of liquidation and the total amount realized from the assets as his stock bears to the total stock of the bank outstanding. The brief of respondent does not take issue with that conclusion. But as the claim of appellants that the judgments are excessive is based upon the conclusion of the trial court in that respect, we must determine whether the conclusion is correct.

The conclusion of the trial court is based upon the language of the statute, sec. 221.42, which reads:

"The stockholders of every bank shall be individually liable, *equally and ratably, not one for another,* for the benefit of creditors of said bank to the amount of their stock at par value thereof, in addition to the amount invested in said stock."

The language "equally and ratably, not one for another," first appears in sec. 39, subch. II, ch. 234, Laws of 1903. Theretofore the statute, sec. 2024, sub. 47, Stats. 1898, read that the stockholders should be individually responsible to the amount of their shares for all the bank's indebtedness and liabilities of every kind. This was the language of the statute when *Rehbein v. Rahr,* 109 Wis. 136, 85 N. W. 315, the last decision of the court upon the point of stockholders' liability, was decided, which held that such liability extended, up to the par value of the stockholders' shares, to the full amount of all debts of the bank.

The words "equally and ratably, not one for another," in the present statute were manifestly taken from the National Bank Act; Rev. Stat. U. S. sec. 5151. The words quoted were construed by the United States supreme court in *U. S. ex rel. Citizens' Nat. Bank v. Knox,* 102 U. S. 422, to mean as appellants contend and the trial court concluded.

The opinion in the *Knox Case* states (p. 425) that to fix the amount of a stockholder's liability it is necessary to ascertain (1) the total par value of all stock held by all stockholders; (2) the amount of the deficit; (3) and then hold the stockholder for such proportion of the deficit as his stock bears to the total stock held by all stockholders. It is there further stated that "the insolvency of one stockholder, or his being beyond the jurisdiction of the court, does not in any wise affect the liability of another." By a familiar rule of construction, in taking over the statute the legislature took it with the meaning given to it by the United States supreme court before its enactment. But if it be not literally true that the 1903 provision was taken from the National Bank Act, its language must be construed as the United States supreme court construed it. It permits of no other construction taking it by itself. And if the language was not taken from the United States statute, it was doubtless taken from the statute of some other state, and the courts of all states having a statute with such language that have construed it have construed it as did the United States supreme court. *In re Hollister,* 27 N. Y. 393; *Coyle v. Taunton S. D. & T. Co.* 216 Mass. 156, 103 N. E. 288, 290; *Gamewell Fire Alarm T. Co. v. Fire & Police T. Co.* 116 Ky. 759, 76 S. W. 862, 866; *Maine Trust & B. Co. v. Southern Loan & T. Co.* 92 Me. 444, 43 Atl. 24, 26. Similar language is construed the same in *Crease v. Babcock,* 10 Met. (Mass.) 525, 555, and *Wiswell v. Starr,* 48 Me. 401.

The statute being construed as above, it is manifest that the amount for which any stockholder is finally liable cannot be ascertained until the bank's affairs are finally wound up or at least have progressed far enough so that all the assets are reduced to cash, as until then the deficit for which the stockholders are liable cannot be ascertained. It is the contention of appellants that the commissioner cannot collect

of the stockholders more than this amount and that he should in the first instance enforce payment of a sum based upon a reasonable estimate of the deficit eventually to result, and finally, if this amount prove insufficient, enforce such additional payment as may be required. This at first blush would seem to be correct. But consideration of the whole statute as it now stands and the results likely to follow from such course seem to us to lead to the conclusion reached by the trial court that the commissioner may collect, in the first instance, the full par value from the stockholder.

The latter part of sec. 221.42, added by amendment, enacted in 1915, provides that "such liability [stockholders' superadded liability] shall accrue and become due and payable as to the stockholders of any bank forthwith, upon the commissioner of banking taking possession of the property and business of such bank under the provisions of the statutes, and may be enforced by him, in an action brought in his name, in the circuit court of the county in which such bank is located. In the event of the liquidation of such bank, the stockholders who shall have discharged such additional liability shall, after the payment of expenses and the claims of creditors, be entitled to reimbursement on account thereof out of any remaining property of such bank before the same is distributed among its stockholders."

The statute thus clearly contemplates that the amount accrues and becomes due and the commissioner may demand it and bring suit to collect it immediately upon the commissioner's taking possession of the bank. Its construction hinges upon the meaning to be given to the words "such liability,"—whether they mean the par-value liability to which the stockholder may be subjected if conditions warrant, or the precise amount of liability to which he actually is to be finally subjected under the conditions that develop. Manifestly the extent of this actual final liability cannot "forthwith" be ascertained or even approximated. The

statute clearly contemplates that suit to recover the amount of the liability contemplated may be commenced "forthwith." It is to be presumed that the amount for which suit may be brought was contemplated as an amount certain, and the only amount certain then conceivable is the par-value limit of liability. The statute contemplates only a single action to recover the individual stockholder's liability and the action contemplated is an action at law against the individual stockholder. In such actions only one judgment is regularly recoverable. This construction is aided somewhat by the language of the latter portion of the section which provides expressly for refunding to stockholders paying their statutory liability before any assets remaining after payment of creditors are distributed among stockholders. This necessarily contemplates collection of amounts on the stockholder's liability above what is necessary to pay debts, and at least indicates that enforcement of the stockholder's liability was not contemplated as limited to the amount to which he may eventually be subjected. The manifest purpose of the 1915 amendment of the statute was to enable the commissioner to collect funds with which to conduct liquidation most advantageously. To conserve assets funds may be necessary to pay liens or secured claims against the bank that the cash on hand is insufficient to satisfy and the stockholder's liability may be the only means of providing cash necessary for this or like purposes without sacrificing by forced sale of assets. These considerations lead us to conclude that the liability that accrues on the commissioner's taking possession on which he may bring suit forthwith is the par-value liability. The stockholder overpaying his liability as finally determined will of course be entitled to a refund of the excess paid.

(3) The trial court concluded that the expenses of administration should be added to the debts to determine the deficiency for which the stockholders are ratably liable, and

appellants claim that this was erroneous. The question is not involved under the instant judgment and will not arise until upon rendering the final judgment in the liquidation proceedings it becomes necessary to compute the exact amount of the stockholders' liability and refund to them the excess collected. But as the question has been briefed by counsel and determination of it is necessary to advise the commissioner how to make his final computation, we will determine it now to avoid an appeal from the final judgment in the liquidation proceedings.

The language in the last part of the amendment to the statute providing that stockholders overpaying their statutory liability "shall, after payment of the expenses and the claims of creditors," be reimbursed before remaining assets are distributed among stockholders, indicates that expenses and claims of creditors are both to be paid out of the fund created by enforcement of the statutory liability. If this is at all inconsistent with the express provision in the first part of the statute that stockholders are liable "for the benefit of creditors," the amendment is the last expression of the legislative intent and must be given effect over the expression in the statute originally enacted. This is in accord with the general rule applicable in the administration of all trusts— and the banking commissioner is a trustee—that counsel fees, costs and expenses of litigation carried on by a trustee in the administration of the trust are payable out of the trust estate. 39 Cyc. 339, 340; *Estate of Cole,* 102 Wis. 1, 12, 78 N. W. 402; sec. 271.14, Stats. It is not to be presumed that it was intended by the legislature that the general rule should be departed from in the absence of language clearly indicating such intent.

(2) The contention of appellants that this action must be dismissed because the commissioner brought separate suits against individual stockholders cannot be upheld. It is here immaterial whether the commissioner proceeded

wrongly or rightly in commencing the individual actions. In either view the contention of appellants Bekkedal and Leihy fails. If the individual actions were rightly brought, appellants Bekkedal and Leihy, by demurring to the complaints in the original actions on the ground that all stockholders were not joined in one suit and securing a ruling of the court in their favor pursuant to which they and all other stockholders upon whom service could be made who had not by payment or judgment been previously subjected to liability were brought into this suit, are estopped from now claiming that this suit is wrongly prosecuted. And if the individual suits were wrongly brought then this suit is being rightly prosecuted. One does not lose a right of action by invoking a wrong remedy. The rule that when the facts constitute either one of two causes of action and one elects which cause he will prosecute, his election is a waiver of the other cause of action, does not operate to bar one who has merely misconceived his remedy. Appellant Black is in a different but no better position. By answer he objected that a certain stockholder named was not made a party to this suit and claimed a defect of parties defendant. He is contending that an action in which all stockholders have joined is the proper proceeding, and cannot be heard to object that he is not proceeded against individually. We are of opinion that the commissioner rightly proceeded by separate actions in the first instance. The statutory obligation of the stockholders is several, not joint. They are liable by reason of different transactions and for different amounts. They may upon the facts have different defenses. The action is a law action in which the defendants are entitled to a jury trial. No one stockholder is at all interested in the result of any action against any other stockholder, as the extent of his liability is not affected by the recovery against any other. It is true that the receivers of corporations in creditors' actions and winding-up proceedings must, in enforc-

ing the statutory liabilities of stockholders, proceed against all in one suit. *Cullen v. Abbott,* 201 Wis. 255, 229 N. W. 85. But this is because each stockholder is interested in what every other pays, as his own liability is affected by the amounts paid by the others. In these suits the stockholders must all contribute equitably and ratably as between themselves. They so contribute *one for another.* But under the statutory liability here involved the stockholders do not so contribute. They contribute "equally and ratably," *not* "one for another." They contribute equally, in the sense that the limit of each one's liability is the par value of his stock; they contribute ratably, in the sense that each contributes in the ratio his stock bears to the total stock; but they do not contribute *one for another* as do stockholders of other corporations. It is also true that it has been held in previous cases that the rule applying to other corporations applies to banks. *Williams v. Brewster,* 117 Wis. 370, 93 N. W. 479. But the bank cases were decided under the old statute, when stockholders contributed *one for another* like the stockholders of other corporations. As the reason for applying the general rule to banks does not now apply, the rule falls with the reason for it. *Shadbolt & Boyd Iron Co. v. Long,* 172 Wis. 591, 179 N. W. 785, decided since the present banking law was enacted, states the rule as to banks as contended for by appellants, but this was not a case of a bank corporation. The statement was *obiter,* and made without considering the difference between the present and the previous bank statutes. Counsel urge that the provision of sec. 221.42 that "such liability . . . may be enforced by him [the commissioner] in an action brought in his name, in the circuit court of the county in which such bank is located," contemplates that only one action including all stockholders shall be brought. But the language of the statute is permissive, not mandatory. It would not be contended that a non-resident stockholder could not be sued in the

state of his residence because only one action can be brought. No more does it follow that resident stockholders may not be sued each in his own county if the commissioner so elects.

(1) As to Bekkedal's ownership of the stock, we are of opinion that the finding of the circuit court that he was such owner must be upheld. He claims that he is not and never was a stockholder of the corporation because he never subscribed for, agreed to take, or received any stock and refused to accept any. According to his claim, late in September, 1921, Olson, who was promoting or acting for those interested in organizing the bank, asked Bekkedal to put up $2,200 for twenty shares of stock so that the bank could open for business and promised that they would return the money to him in thirty days. He paid to the bank that amount in September and received that amount from the bank November 1st. But he sent to the bank his judgment note for $2,200 payable in a year and the money was sent to him on receipt by the bank of this note which he later paid. He admits that the $2,200 was to be returned to him in the form of a loan. In a letter written at time of receipt of the $2,200 from the bank Bekkedal says: "The arrangements made with Mr. Olson at the time *I subscribed for the stock* is the fact that the money was to be returned in thirty days." In view of this statement and the giving of the note and its payment without claiming recourse against the bank, we consider that the trial court was justified in finding that Bekkedal is a stockholder, although he returned the stock when it was sent to him, and claimed not to own it. The stock was issued and entered on the bank's books as owned by him, and he was at all times ostensibly a stockholder on the bank's records. He claims he gave the money in order to enable the bank to open for business on representation that all stock necessary for that purpose was sold but twenty shares. On this theory his act was in contravention of public policy as declared by the statute and a fraud on the

public, and being so the law leaves the defendant where he left himself, the owner of the twenty shares on the bank's books and, as to the creditors, of the twenty shares he ostensibly subscribed and paid for.

Some other questions are suggested in the brief of appellants but they are either not material in this action or not properly raised in absence of appeal or motion to review by the respondent.

*By the Court.*—The judgment is affirmed.