CLEARY and others, Respondents, vs. BROKAW, Appellant.

*March 8—April 7, 1937.*

410

*C. G. Cannon* of Appleton, for the appellant.

For the respondents there was a brief by *Bradford, Bradford & Derber* of Appleton, and oral argument by *A. S. Bradford.*

NELSON, J.    The material facts are not in dispute.    The Bank of Kaukauna was incorporated on August 14, 1883, pursuant to the statutes then existing.    Its capital stock was $30,000, represented by three hundred shares, each of the par value of $100.    In 1892, its articles were duly amended, increasing its capital stock to $80,000, divided into eight hundred shares of the par value of $100 each.    On September 1, 1892, N. H. Brokaw, a resident of Kaukauna, and the late husband of the defendant, agreed to purchase and did purchase twenty-four shares of its stock for which he paid $2,400.    Stock certificate No. 105, for twenty-four shares, was delivered to him.    On October 30, 1900, N. H. Brokaw died testate.    On September 1, 1903, the bank executed and delivered to her stock certificate No. 30, upon her surrender-

ing stock certificate No. 105. On December 3, 1901, said stock was duly assigned to the defendant as ·trustee by the final judgment of the county court, pursuant to the will of her deceased husband. On September 8, 1914, the said trust having terminated, said stock certificate No. 30 was duly assigned to the defendant in pursuance of the will of her deceased husband. On September 14, 1914, said certificate was surrendered to the bank and canceled and a new certificate, No. 128, was issued to her in lieu thereof. In December, 1929, the capital stock of the bank was again increased from $80,000 to $100,000, divided into five thousand shares, each of the par value of $20. The defendant's stock certificate No. 128 was called in by the bank and canceled and a new certificate, No. 8, was issued and delivered to her on December 8, 1929, in lieu of her old certificate. The new certificate was for one hundred twenty shares, the total par value of which was $2,400.

On or about March 4, 1933, the bank was closed for the period of the bank holiday. During the holiday the bank was examined. After about ten days it was permitted to reopen, but on a restricted basis. Later on, the banking commission suggested that the bank would have to stabilize. On April 7, 1933, a meeting of the directors of the bank was held. It was resolved by the directors that the bank adopt a stabilization plan on the percentage basis to be approved by the commissioners of banking and that a one hundred per cent voluntary assessment be made upon all of the stockholders of the bank, payable on the call of the commissioners of banking. On April 18, 1933, the directors further resolved "that there be and hereby is made and levied an assessment upon each and every share of capital stock of this bank in the sum of one hundred per cent of the face thereof, . . . the same to be paid at the counters of this bank on or before one year, pursuant to sec. 220.07, Wisconsin Statutes, and that all stock on which such assessment is not paid as required shall

be sold as provided by sec. 220.07." No attempt seems to have been made to collect the voluntary assessment levied by the directors, and it appears that no stockholder paid the amount thereof. On May 2, 1933, representatives of the commission met with the directors of the bank and many of its creditors, for the purpose of discussing stabilization plans. At that meeting three trustees were elected by the creditors of the bank to administer certain slow, unacceptable, and depreciated assets of the bank, amounting to forty per cent thereof and including notes, bond depreciation, etc. A stabilization agreement was thereafter formulated with the approval of the banking commission and signed by more than eighty per cent of the unsecured creditors of the bank. The segregated assets were assigned to the trustees to administer for the benefit of the creditors who waived forty per cent of their claims against the bank, pursuant to the terms of the stabilization agreement.

The present action is concededly grounded upon and is brought pursuant to the provisions of secs. 220.07 (20) and 221.42, Stats. 1933. Sec. 220.07 (20) is as follows:

"*Stockholder's liability, when due, effect of payment.* Whenever a stabilization and readjustment agreement entered into between any bank and the depositors and unsecured creditors of such bank has been approved by the commissioner of banking, the double liability provided by section 221.42 shall forthwith become due and the payment thereof by the stockholders of such bank shall be enforced by the commissioner of banking in the manner provided by said section 221.42 or in some other manner as he may deem advisable. All proceeds therefrom shall be for the benefit of the depositors and unsecured creditors existing at the time of the approval of such stabilization and readjustment agreement by the commissioner of banking. Any stockholder who has fully paid a voluntary assessment levied against him under any such agreement shall, upon the unconditional surrender of his stock to said bank, be relieved from all further liability thereon. Whenever an assessment levied against any stock-

holder under such agreement has been fully paid, such stockholder shall not be subject to any further or additional assessment for one year after the date of such payment."

So much of sec. 221.42, as need be recited, is as follows:

"221.42 *Liability of stockholders.* The stockholders of every bank shall be individually liable, equally and ratably, not one for another, for the benefit of creditors of said bank to the amount of their stock at the par value thereof, in addition to the amount invested in said stock. Such liability shall continue for one year after written notice to the commissioner of banking of any transfer of stock, as to the affairs of the bank at the time and prior to the date of the transfer. . . . Such liability shall accrue and become due and payable as to the stockholders of any bank forthwith, upon the commissioner of banking taking possession of the property and business of such bank under the provisions of the statutes, and may be enforced by him, in an action brought in his name, in any court of record having civil jurisdiction of the county in which such bank is located, and such action shall have precedence over all other actions pending in such court. In the event of the liquidation of such bank, the stockholders who shall have discharged such additional liability shall, after the payment of expenses and the claims of creditors, be entitled to reimbursement on account thereof out of any remaining property of such bank before the same is distributed among its stockholders."

The defendant earnestly contends that she is not bound by or subject to the provisions of sec. 220.07 (20) for the reasons that the stock which she owns is the identical stock which her husband purchased in 1892; that when her husband purchased the stock in 1892, the provisions of the federal and state constitutions, the statutes then in force, relating to state banks, the stock thereof and the liability of stockholders to creditors entered into and became a part of such contract of purchase; that the rights in and obligations under the stock in question became vested, and such rights cannot be changed, added to, or taken away without impairment of

the contract; that when, upon the death of her husband and upon the termination of the trust under his will, she took the stock and became subrogated to all of the rights of her deceased husband in such stock she assumed and became responsible only for the liabilities and obligations imposed by law at the time of its original purchase; that statutes cannot be given retroactive effect if they deprive parties to a contract of rights guaranteed by the federal or state constitutions; that neither statutes nor constitutional amendments giving creditors of a bank new remedies against stockholders can affect or bind stockholders whose rights have become vested prior to such enactments; that the remedies provided by the statutes of this state, which existed at the time her husband purchased the stock, entered into his contract of purchase and cannot be lessened, as to the creditors of the bank, or increased, as to the stockholders of the bank, without impairing the obligations of that contract of purchase. Numerous other contentions are made, all of which are directed principally to the proposition that secs. 220.07 (20) and 221.42, are unconstitutional as to her, because they impair the contract which was entered into and became a part of the purchase of the stock by her husband in 1892.

It is unquestionably established by the decisions of all the courts that when one acquires stock in a bank or other corporation, he takes it subject to the obligations then imposed by law upon its stockholders; that such obligations, though imposed by statute, are contractual and therefore the burdens imposed may not be increased without impairing the obligations of the stockholder's contract or lessened without impairing the rights of the creditors. *Dagg v. Hammons,* 34 Ariz. 445, 272 Pac. 643; *Luikart v. Bunz,* 125 Neb. 867, 252 N. W. 473; *T. W. Harrison v. Remington Paper Co.* (C. C. A.) 140 Fed. 385, 3 L. R. A. (N. S.) 956; *Myers v. Knickerbocker Trust Co.* (C. C. A.) 139 Fed. 111, 1

L. R. A. (N. S.) 1171; *Evans v. Nellis* (C. C.), 101 Fed. 920; *Webster v. Bowers* (C. C.), 104 Fed. 627; *Western National Bank v. Reckless* (C. C.), 96 Fed. 70; *Thompson v. Auditor General,* 261 Mich. 624, 247 N. W. 360; *Union P. R. Co. v. United States,* 99 U. S. 700; *Whitman v. National Bank,* 176 U. S. 559, 20 Sup. Ct. 477; *Bernheimer v. Converse,* 206 U. S. 516, 27 Sup. Ct. 755; *Bank of Minden v. Clement,* 256 U. S. 126, 41 Sup. Ct. 408; *Farmers' Bank v. Scott,* 144 Ky. 575, 139 S. W. 801; *Schramm v. Done,* 135 Or. 16, 293 Pac. 931; *Haberlach v. Tillamook County Bank,* 134 Or. 279, 293 Pac. 927; *Hammons v. Crozier,* 112 Cal. App. 715, 297 Pac. 567; *Austin v. Strong,* 117 Tex. 263, 1 S. W. (2d) 872, 3 S. W. (2d) 425; *Douglass v. Loftus,* 85 Kan. 720, 119 Pac. 74; *McDonnell v. Alabama Gold L. Ins. Co.* 85 Ala. 401, 5 So. 120; *Stocker v. Davidson,* 74 Kan. 214, 86 Pac. 136; *Lang v. Lutz,* 180 N. Y. 254, 73 N. E. 24; *Yoncalla State Bank v. Gemmill,* 134 Minn. 334, 159 N. W. 798.

In the recent case of *Schafer v. Bellin Memorial Hospital,* 219 Wis. 495, 502, 264 N. W. 177, the following quotation from 14 C. J. p. 973, § 1507, was approved:

" 'The liability created by these ordinary statutes of superadded individual liability is not penal nor statutory, but is contractual in its nature, the theory being that the statute enters into and forms a part of the engagement of the stockholders when they become members of the corporation, and that each stockholder impliedly contracts with the creditors of the corporation that he will assume the liability declared by the statute in their favor.' "

The questions, therefore, which must be determined in this action are: (1) Did the defendant succeed to all of the contract rights which attached to or inhered in the purchase of the twenty-four shares of stock by her deceased husband in 1892? (2) If the defendant is not entitled to assert the rights which her husband might have asserted were he living,

then have her contractual rights as a stockholder in the bank been impaired?

While the defendant contends that she, as a stockholder, is entitled to assert all of the rights which inhered in the contract of purchase in 1892 under the statutes then existing, no authority is cited in support of that contention. She acquired her stock under the will of her deceased husband. She accepted the stock so bequeathed to her and presented it to the bank for transfer to her in 1914. In our opinion, she became a stockholder of the bank as of the date the stock was issued to her, and took the stock subject to such obligations as were then imposed by the statutes in this state. We see no difference between the acquirement of stock by purchase, by gift *inter vivos,* or by will. When the transfer was completed and new stock issued to her, she became a stockholder subject to the obligations imposed by law. The reissue of the stock to her in 1929, when the bank increased its capital stock from $80,000 to $100,000, and changed the par value of the stock from $100 per share to $20 per share, was, in our view, simply a reissue to her of the identical stock which she had held in the bank from the year 1914. In any event, her rights and obligations in 1914 were substantially identical with her contractual rights and obligations in the year 1929. We conclude, therefore, that her rights as a stockholder became vested in the year 1914, when she became a stockholder of the bank.

Sec. 220.07 (20) was enacted by the legislature in 1933, by ch. 17, sec. 2. So the vital question in this action is whether that section increased her liability as a stockholder to such an extent, if at all, as to operate within the rules of the established law as an impairment of her contractual rights.

It is generally held that a remedy which exists at the time a contract is made, enters into the obligation of the contract to such an extent that the remedy cannot be altered if rights and

interests under the contract are overturned. *Green v. Biddle,* 8 Wheat. (U. S.) 1.

In *Bronson v. Kinzie,* 1 How. (U. S.) 311, 316, it was said:

"Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly on the contract itself. In either case it is prohibited by the constitution."

In *Brine v. Hartford F. Ins. Co.* 96 U. S. 627, 637, it was said:

"At all events, the decisions of this court are numerous that all laws which prescribe the mode of enforcing a contract, which are in existence when it is made, are so far a part of the contract that no change in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the constitution of the United States."

In *McCracken v. Hayward,* 2 How. 608, 611, it was said:

". . . The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning. When it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party, to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though pro-

fessing to act only on the remedy, is directly obnoxious to the prohibition of the constitution."

In *Siebert v. Lewis,* 122 U. S. 284, 7 Sup. Ct. 1190, 1194, it was said:

"It is well settled by the decisions of this court that 'the remedy subsisting in a state, when and where the contract is made and is to be performed, is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is therefore void.' "

Numerous other cases might be cited to the same effect.

When the defendant became a stockholder in 1914, sec. 2024—44, Stats. 1913, was effective and her obligation as a stockholder was determined by that statute. That statute provided, so far as is here material, that "the stockholders of every bank shall be individually liable, equally and ratably, not one for another, for the benefit of creditors of said bank to the amount of their stock at the par value thereof, in addition to the amount invested in said stock. . . ." The language: "Such liability shall accrue and become due and payable as to the stockholders of any bank forthwith, upon the commissioner of banking taking possession of the property and business of such bank under the provisions of the statutes, and may be enforced by him, in an action brought in his name, in the circuit court of the county in which such bank is located. In the event of the liquidation of such bank, the stockholders who shall have discharged such additional liability shall, after the payment of expenses and the claims of creditors, be entitled to reimbursement on account thereof out of any remaining property of such bank before the same is distributed among its stockholders," became a part of the law in 1915 (ch. 168). Under the law, as so amended, the liability was declared to accrue "upon the commissioner of banking *taking possession* of the property and business of such bank under the provisions of the statute." The statutes

at that time contained no provisions relating to stabilization proceedings. But the banking laws were amended so that sec. 220.07 (20), Stats. 1933, provided:

"Whenever a stabilization and readjustment agreement entered into between any bank and the depositors and unsecured creditors of such bank has been approved by the commissioner of banking, the double liability provided by section 221.42 shall forthwith become due and the payment thereof by the stockholders of such bank shall be enforced by the commissioner of banking in the manner provided by said section 221.42 or in some other manner as he may deem advisable. . . ."

It thus appears, that the legislature has declared that the double liability may become due upon the commissioner of banking taking possession of the property and business of a bank and whenever a stabilization and readjustment agreement is entered into. The accrual of the double liability has thus only been made definite and certain.

So the question arises whether such laws have increased the defendant's liability as a stockholder so as to impair the contract that she entered into when she became a stockholder.

In our opinion, such laws did not increase her liability. At the time the stabilization agreement was entered into, the bank was concededly in a precarious condition, as shown by the examiner's report. Some of its assets were unacceptable. Bonds in the amount of more than $90,000 were in default. Its other bonds had depreciated more than $138,000 in value. Its deposits (indebtedness) amounted to about $553,000. In that situation, two courses were open to the banking commission: (1) To take possession of the property and business of the bank for purposes of liquidation; or (2) to permit it to remain open under an approved stabilization agreement. The second course was pursued. A stabilization agreement was entered into and the bank permitted to continue to do business pursuant to its terms. It seems clear that had the

stabilization agreement not been entered into the banking commission, in the performance of its duty, would have had to take full possession of the bank. Had it done so, the liability of the defendant would have soon accrued. Viewing the situation as it actually existed, it is our opinion that the defendant's liability was not in fact increased and that her contract obligation as a stockholder was not impaired.

Whether her rights may be violated in the future presents another question. Her liability as a stockholder for the benefit of the creditors of the bank, though individual, is equal and ratable, "not one for another," with other stockholders. Sec. 221.42 was borrowed from the federal government. That statute was considerately construed by the supreme court of the United States in *U. S. ex rel. Citizens' National Bank v. Knox,* 102 U. S. 422, prior to its adoption in this state. In *Schwenker v. Bekkedal,* 204 Wis. 546, 551, 556, 236 N. W. 581, such borrowing was recognized. In that case it was, among other things, said:

"The opinion in the *Knox Case* states (p. 425) that to fix the amount of a stockholders' liability it is necessary to ascertain, (1) the total par value of all stock held by all stockholders; (2) the amount of the deficit; and (3) then hold the stockholder for such proportion of the deficit as his stock bears to the total stock held by all stockholders. It is there further stated that 'the insolvency of one stockholder, or his being beyond the jurisdiction of the court, does not in any wise affect the liability of another.' . . . It permits of no other construction taking it by itself. . . . The statute being construed as above, it is manifest that the amount for which any stockholder is finally liable cannot be ascertained until the bank's affairs are finally wound up or at least have progressed far enough so that all the assets are reduced to cash, as until then the deficit for which the stockholders are liable cannot be ascertained. . . . They [the stockholders] contribute equally, in the sense that the limit of each one's liability is the par value of his stock; they contribute ratably, in the sense that each contributes in the ratio his stock bears

.to the total stock; but they do not contribute *one for another* as do stockholders of other corporations."

Under the plain language of sec. 221.42, and the construction given to it by the courts, it is clear that the banking commission, the bank, or the trustees of a segregated trust, may not appropriate the full amount of the double liability paid by, or recovered from a stockholder, unless it certainly appears that the amount so paid or recovered, represents and is an equal and ratable share of the "expenses and the claims of creditors," and unless it does not amount to a payment by one stockholder for another. If the amount of a double liability paid by the stockholder is wholly appropriated to the payment of claims of creditors regardless of the statutory provisions, his rights would be violated. There is, however, nothing in the present record to indicate that the banking commission, the bank, or the trustees intend to so appropriate the double liability which the court adjudged that the defendant should pay, if and when she does pay it. We presently indulge the presumption that the banking commission, the bank, and the trustees will comply with the law in the particular mentioned in performing their respective duties.

Other questions. raised by the defendant have been carefully considered, but in our view they are not ripe for determination.

*By the Court.*—Judgment affirmed.