BANKING COMMISSION, Appellant, vs. PURVES, Respondent.

*April 11—May 17, 1938.*

*Fulton Collipp* of Friendship, for the appellant.

For the respondent there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau* and *Robert A. Goggins*.

FOWLER, J. The defendant formerly held thirty-four shares of stock in the Friendship State Bank. The bank is in the hands of the Banking Commission for liquidation. The plaintiff imposed an assessment of $3,400 on the defendant under sec. 221.42, Stats., which imposes superadded liability on stockholders of state banks.

The defendant paid a hundred per cent assessment against the stock which was imposed under an agreement made in proceedings under the statute governing stabilization of state

banks, and claims that this payment exonerates him from his superadded liability. The circuit court sustained his contention and dismissed the complaint. The defendant counterclaimed for the amount of his deposit in the bank at the time the Banking Commission took over the bank, and judgment was rendered upon this counterclaim.

The statute under which the defendant claims exemption from liability for the double-liability assessment is sec. 220.07 (20), Stats. 1933, repealed by ch. 245, Laws of 1935, which became effective July 16, 1935. The section provides for imposition and collection of the superadded liability in stabilization proceedings, but provides that "any stockholder who has fully paid a voluntary assessment levied against him under any such [stabilization] agreement shall, upon the unconditional surrender of his stock to said bank, be relieved from any further liability thereon."

A hundred per cent assessment against all stockholders was made in the stabilization proceedings. Purves paid the assessment in cash on one share, and kept the share in his possession to enable him to continue to act as an officer of the bank. An agreement, approved by the court, was made between the trustees of the segregated trust and certain stockholders, including the defendant, that the stockholders should meet the assessment by giving their notes to the trustees for the amount thereof, bearing interest and payable on or before one year, and delivering their stock to the trustees as security for the notes. Purves gave his note for $3,300 and turned over the thirty-three shares of stock as security. On November 29, 1935, Purves paid the full amount of his note to the trustees and received back the thirty-three shares of stock. The bank closed December 7, 1935. On December 20, 1935, a hundred per cent statutory assessment was made by the Banking Commission. On the same day Purves delivered the stock to the agent of the Banking Commission

in charge of the bank as an unconditional surrender of the stock pursuant to the provision of sec. 220.07 (20), Stats. 1933, above quoted. The agent, being without authority to act for the commission, forwarded the stock to the commission. The commission refused so to accept the stock and forthwith on December 27th returned it to the defendant.

At the time of the transactions involved, sec. 220.07 (16), Stats. 1933, provided for the stabilization of state banks, and sub. (20) of the section provided that whenever a stabilization agreement had been entered into and approved the double liability of stockholders imposed by sec. 221.42, Stats., should forthwith become due, and payment thereof might be enforced as provided by sec. 221.42, Stats., or in such manner as the commissioner of banking might deem advisable. This does not imply that an assessment to enforce the liability must immediately be made. The liability is then due, but it may be enforced when and as the banking commissioner shall deem advisable. Sub. (20) also provided that all proceeds from enforcement of such liability should be for the benefit of the depositors and unsecured creditors of the bank existing at the time of the approval. Sub. (20) also provided that any stockholder who had fully paid any voluntary assessment levied against him under the stabilization agreement should upon the unconditional surrender of his stock to the bank be relieved from all further liability thereon, and that a stockholder who had paid an assessment under a stabilization agreement should not be subject to any other assessment for one year. The subsection is printed in full in the margin.[1]

---

[1] "Sec. 220.07 (20), Stats. 1933: *Stockholder's liability, when due, effect of payment.* Whenever a stabilization and readjustment agreement entered into between any bank and the depositors and unsecured creditors of such bank has been approved by the commissioner of banking, the double liability provided by section 221.42 shall forthwith become due and the payment thereof by the stockholders of such bank shall be enforced by the commissioner of banking in the manner

In *In re Plain State Bank,* 217 Wis. 257, 258 N. W. 783, it was held that payment of a voluntary assessment of one hundred per cent of the par value of stock did not relieve a stockholder from payment of the statutory assessment under sec. 221.42, Stats., although the commissioner of banking had told the stockholders that such payment would so relieve them. The *Plain State Bank Case* involved the payment of a voluntary hundred per cent assessment pursuant to a stabilization agreement, but sub. (20) of sec. 220.07, Stats., had then not been enacted. The respondent's payment was of such an assessment as was involved in the *Plain State Bank Case,* but respondent contends that the surrender of his stock as stated relieves him from liability for the statutory assessment under the terms of sub. (20).

While sub. (20) declares that payment of an assessment made pursuant to a stabilization agreement accompanied by an unconditional surrender of the stock to the bank shall discharge the stockholder from further liability thereon, it would seem that payment of any such assessment less than a hundred per cent would not so operate, under the contract provision of the United States constitution. But as the payment here was of a hundred per cent assessment that question is not before us.

The appellant claims that the instant payment did not operate to discharge the defendant because, (1) if the giving of the note be considered as payment of the voluntary

provided by said section 221.42 or in some other manner as he may deem advisable. All proceeds therefrom shall be for the benefit of the depositors and unsecured creditors existing at the time of the approval of such stabilization and readjustment agreement by the commissioner of banking. Any stockholder who has fully paid a voluntary assessment levied against him under any such agreement shall, upon the unconditional surrender of his stock to said bank, be relieved from all further liability thereon. Whenever an assessment levied against any stockholder under such agreement has been fully paid, such stockholder shall not be subject to any further or additional assessment for one year after the date of such payment."

assessment, the stock was not turned over to the bank in unconditional surrender of the stock, and (2) if the payment of the assessment be considered as paid when the note was paid, (a) the statute relieving from liability on surrender of the stock to the bank had been repealed when the note was paid, and (b) the stock was not surrendered to the bank when the note was paid, but twenty-one days thereafter, after proceedings for liquidation of the bank had been instituted.

(1) The stock was not turned over to the bank for nearly a year after the note was given, but was held during that period by the trustees of the segregated trust and then handed back to the stockholder. The stockholder then considered the stock as of some value. He wished it returned to enable him to continue as an officer of the bank. Had he surrendered the stock unconditionally to the bank he could hardly have expected so to continue. Delivery of the stock to the trustees as collateral to his note is fatally inconsistent with unconditional surrender of it to the bank. Thus, there was no unconditional surrender of the stock to the bank when the assessment was paid, if delivery of the note constituted payment.

(2) The note was paid on November 29, 1935. The stock was turned back to the plaintiff by the trustees of the segregated trust on December 2d. The bank was then in operation. If the defendant had turned the stock over to the bank as soon as he received it, this would have relieved him, under the language of sub. (20), if it be considered that the assessment was not paid until, but was paid when, the note was paid. But the defendant did not then surrender the stock to the bank. The bank was still in operation. The defendant was still one of its principal officers. The bank continued to operate until it closed its doors and went into the hands of the Banking Commission on December 7th.

The defendant held the stock in his possession until December 20th, the day the statutory assessment was made, and then tendered it to the agent of the Banking Commission in charge of the bank. We are of opinion that the defendant's attempted surrender twenty-one days after he received it from the trustees of the segregated trust was not timely. His contention (b) therefore falls. His contention (a) manifestly also falls, for the statute authorizing surrender was no longer in force when he attempted to surrender the stock, and he is in the situation of the stockholder in the *Plain State Bank Case, supra*. We must hold that the defendant is liable under the terms of the statute. It follows that the judgment must be reversed and judgment entered for the plaintiff for the amount of the assessment less the amount of his deposit, with interest, unless the contention of respondent under (3) below stated prevails.

(3) The respondent contends that the statutory assessment was void because made within one year from the time when the voluntary assessment was paid. The note was delivered on December 22, 1934, and was paid on November 29, 1935. Thus, whichever date be considered as the date of payment of the assessment, the statutory assessment was imposed within one year from the date of its payment. The statute provides that when a voluntary assessment is paid by a stockholder he "shall not be subject to any further or additional assessment for one year after the date of such payment." Thus, if the provision quoted applies to an assessment for the statutory liability, the assessment here involved was prematurely imposed and must be considered as nugatory. However, we regard the one-year provision of the statute as to imposing assessments as referring to and covering voluntary assessments only. Stockholders may relieve themselves from the statutory assessment by paying a hundred per cent voluntary assessment under a stabilization

agreement, and surrendering their stock. If they do not choose so to relieve themselves, their obligation for it continues. As soon as liquidation proceedings are instituted, if not sooner, it becomes apparent whether the statutory liability must be imposed, and it cannot be assumed that the statute contemplates that when necessity for enforcement of the liability becomes apparent it must be delayed until one year after a voluntary assessment has been paid.

We again call attention to the point that the stockholder's eventual liability is limited to such ratio of the face of his stock as his stock bears to the total stock of the bank. While the whole amount of the statutory liability may be collected, only such part as indicated can be used to pay creditors and the rest must be turned back to the stockholder. *Cleary v. Brokaw,* 224 Wis. 408, 421, 272 N. W. 831; *Schwenker v. Bekkedal,* 204 Wis. 546, 236 N. W. 581.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment for the plaintiff in accordance with the opinion.